Good morning Your Honors, may it please the court, counsel, I'm Carrie Bryson on behalf of the Office of the State Appellate Defender. I represent John Ray in this appeal. As the court is aware, we've raised three issues in the brief. The second and third of those issues are new trial issues. We've asked the court to review them under the plain error doctrine because neither was properly preserved below. If this court would go on to review those issues and find plain error, the state has conceded error essentially on the third issue, which is the 431B issue involving the jury voir dire. If you don't grant us relief on the first issue and go on to review the second and third on plain error, there's really no question on the third that there was error. On the second, the state disputes both the contention that there was error and that it was plain. I'd like to focus my discussion today on the first issue for a couple of reasons. First of all, this court will necessarily consider that first issue because it addresses the sufficiency of the evidence, and so this court has to consider that first. And even if this court rejects the challenge to the sufficiency argument, it does demonstrate why this was a closely balanced case and why plain error review then would be appropriate as to the second and third issues. On the first issue, we've argued both that John Ray was not proved guilty beyond a reasonable doubt, or alternatively, that the restricted driving permit in this case was unconstitutionally vague. And I'm going to address each of those in turn. As to proof beyond a reasonable doubt, there's no dispute that John Ray had a valid restricted driving permit on the date in question. And there's also no dispute that he was operating a vehicle within the days and times allowed by that permit on the date of this traffic stop. The dispute in this case centers on whether he was driving in conjunction with self-employment related duties and within a permitted radius. The language in the permit is pretty broad. It says he's allowed to self-employ. John Ray owns a tattoo business, he's self-employed, and the permit allows him to operate within a radius as required for self-employment related duties and in conjunction with self-employment related duties within the listed work hours and radius. It doesn't set a specific number of miles or anything quite that definite. So John Ray stopped driving his motorcycle six or eight miles, and it does allow him to drive his motorcycle, that's his vehicle, six or eight miles from where his home and his physical place of business are located in Pekin, and he stopped in Creve Coeur up the road. He tells the officer he's been getting gas, and that's not disputed, that he had gotten gas for his vehicle. He also says he'd been conducting some advertising activities. He testifies to that at trial. He didn't say that at the time of the traffic stop. Regardless, both of those things fit within the parameters of this fairly broad driving permit. Getting gas, first of all, he told Miller he left work and went to the Creve Coeur Freedom Station for gas. He said he needed a special kind of gas for his motorcycle, 100 octane, which as far as I can tell is a higher quality of fuel that he said his motorcycle required. He didn't say where he'd been working or what activities he'd been performing that day, and Miller didn't ask him. That Miller's the officer. He didn't ask him. The state doesn't dispute, you have to get gas sometime for a vehicle if you're operating under a restricted permit and you're driving for self-employment. The state just says you can only do it if it's incidental to work-related duties. That's the only time you can get gas. The permit doesn't say that, but that's the state's argument. The state's argument also, and Miller's conclusion, seemed to be, well, there are gas stations in Pekin, so you have to get gas in Pekin, even though he says he needs a special kind of gas that's only available at two stations in the area, one in Creve Coeur, one in Bartonville, which is farther from Pekin, across the river. I'm sure your honors are familiar. Was there 100 octane gas at that gas station? So there's a question about that. On the date he was stopped, in June of 2011, it doesn't seem anybody checked. When Officer Miller was called in the state's case-in-chief, he didn't really know what octanes were there. So while the defense was presenting its case-in-chief, it seems that Officer Miller went over and looked, and this is like a year later when he's being tried. Comes back and is called in rebuttal and says, well, they only have 87, 89, and 92. That's all I saw. Not that necessarily they didn't have 100 octane in July of 2012 when this trial was occurring, but regardless, what's really relevant is what they had in June of 2011, and it seems nobody checked. Does 100 octane gas even exist? Well, I guess it does. I mean, this is off record, but if you want to know, I googled. It seems that it does. According to Guvon, I'm not skilled enough to know exactly the difference, but it seems that it's a higher quality and something about combustion and burning temperatures, but apparently it does. So as to your question about, though, did they have it? In June of 2011, the only evidence we have is John Ray's testimony that they did, because the officer didn't seem to know what they had in June of 2011. He even only testified in his belief, but it seems his belief was just speculation based on what he saw a year later. Regardless, even if, or in addition to, I guess, the getting gas, I mean, John Ray's testimony at trial was that he was out doing some advertising that day, and again, it's a tattoo business. The advertising seems a little informal. You hang some flyers, you pass out business cards, it's word of mouth, you know, it says he does that everywhere he goes. I mean, presumably he would hang flyers at a gas station or, you know, thumbtack your business cards to the board, maybe pass them out in a bar, maybe at gyms. That's how he says he advertises, and the state doesn't dispute that that's how he advertises his business. The state just disputes that that was what he was doing that day, because he didn't mention that to Officer Miller when he was stopped. But again, Officer Miller didn't ask, and the permit in this case, you know, has additional language on it that says he can drive in a radius as required for self-employment related duties subject to law enforcement verification. That puts some burden on the state to verify, to do something to check on what it was he was doing, not just, well, I was, you know, at work and I went to get some gas. Well, ask him. I mean, it's a broad, it's a very broad permit. What duties were you doing? Where were you doing them? None of these questions were asked. It's speculation to say he wasn't within the parameters of this permit when the law enforcement officer didn't do anything toward verifying whether he was or wasn't. You know, the defendant said he was at work, and how is he supposed to know? He should elaborate on, well, I was at work, but I wasn't at my physical place of business. You know, when you're self-employed, you work a lot, you do a lot more things related to your self-employment than sitting in your place of business. All the responsibility is yours. When you're dealing with the sufficiency of the evidence in a case like this, and there's evidence, I mean, there are gas stations in Pekin, and so when you present there are gas stations in Pekin, he's outside, he's not around Pekin, he's someplace else claiming about some other kind of gas. Was it the state's burden? I mean, they have to prove the case all the time beyond a reasonable doubt, but they've proven that he was outside of Pekin where there are gas stations claiming to get gas. And so... I mean, the permit doesn't require you to stay in Pekin to get gas, you know, and if that, that would be an easy requirement to include in a permit if it were to be construed that narrowly. And maybe this kind of touches on the vagueness argument as well, but the vagueness of his testimony is that he needed to leave Pekin because the stations in Pekin didn't carry the type of fuel that his vehicle required. But what if it was, you know, well, the gas in Grieve Corps is a lot cheaper. You know, when you're self-employed, every penny counts. You know, you're saving money where you can. So if part of his self-employment is he has to drive, can he go to the cheapest gas station? You know, within reason, within this, you know, radius that's required for self-employment related duties, which is really broad. How is he supposed to know? You know, how do we answer that question when the permit doesn't tell him? You have to stay in Pekin. Or you can only get gas on the shortest route, not even just in Pekin, but if there's one station between your home and your work, you can only go there. None of these things are in the permit. The permit's really broad. And so how he's supposed to discern that on the face of this permit, I think, is questionable. Isn't the jury the one that's given all the evidence, and they're going to have to determine if they think it's beyond a reasonable doubt or not, right? The jury does determine, and I mean, obviously the standard of review is such that, you know, we're just taking the evidence in the light most favorable, but our submission here is the state didn't even meet that burden, that the evidence, even in the light most favorable, there's too much speculation here. And even if, again, even if your honors disagree, the evidence is a good point to talk about that vagueness. You know, it has to provide a person of ordinary intelligence with a reasonable opportunity to determine whether his conduct is lawful or unlawful. And it also has to be specific enough in defining, you know, the offense or the permitted or unpermitted conduct to prevent discretionary enforcement or arbitrary enforcement by law enforcement. And I think both of those factors fail in this case. You know, again, the state, in their argument, they kind of read into this permit some exceptions that really aren't there, saying, well, you know, you can get gas only if it's incidental to a job-related function. That's not in the permit. You can't stop for the specific purpose of getting gas. You're not prevented from doing that in the permit. Even if you need high-performance gas, you can't go six or eight miles away. You know, and the state says if there's a closer alternative, well, the only evidence we have here is that there's not. There wasn't a closer alternative on that date of the traffic stop. Again, it just leaves too many things open to question. You know, it seems the state, the state seems they would concede, you know, if John Ray had told the police officer that he had been out buying supplies for his business that day and stopped for gas, that would be okay. Well, his testimony was that he was out conducting advertising for his business and he got gas. He's just up the road. I mean, it's not unreasonable to think he would be doing those activities. But regardless, I mean, if we're talking about vagueness, the permit in this case just wasn't specific enough to allow either John Ray or the officer to determine whether his conduct was lawful. So I think a couple of things. I mean, the state's argument largely seems to be, well, he's outside of Pekin getting gas. Well, if he's not allowed outside of Pekin to get gas, it could say that. You know, you can fuel your vehicle only in Pekin. Your radius is limited to the Pekin city limits for purposes of getting gas. I mean, you have to apply to get this permit. And if it were, you know, something more narrow were required, presumably during the application process, those questions could be asked. You know, John Ray could have given evidence to the Secretary of State about, well, just how far do you need to travel for these various duties, and it could be more narrowly defined. It's wide open here. So I would submit specific mileage, specific location, something of that nature to make it, I guess, so that John Ray could have interpreted whether his activity was lawful or not and that there wouldn't be an opportunity for arbitrary enforcement of the conditions. I mean, John Ray did what he was supposed to do in this case. You know, he had his license suspended. He applied for a restricted driving permit and obtained that permit. The one that was issued was fairly broad. It was enough to cover his getting gas and or advertising, and the state failed to prove beyond a reasonable doubt that he was operating outside the scope of that permit on the date in question. Alternatively, it's unconstitutionally vague, and for both those reasons, we'd ask this Court to reverse outright the conviction. If you don't, we'd ask you to go on and consider the second and third issues under the plein air doctrine and reverse and remand for a new trial. You know, arguably, with regard to the third issue, I think it's Thompson who tells us that not following the 431 factors would not be a second-prong violation as far as plein air. Right. Yeah. So then you're trying to fit it into a la Heron, the closely balanced. Right. Although there's the Adams and White case, which arguably is suggesting a more contextual approach to the first prong. It's unclear. The Supreme Court hasn't overruled Heron. Right. But if that's the case, if you look at it from a contextual standpoint, you really wouldn't have plein air. I mean, when you're talking contextual, you wanted to be able to show this particular error affected this particular outcome. Yeah, given all the questions asked to the jurors and so forth. Right. That's what I mean by the contextual. So you'd really have to show, you know, a heightened view of the prejudice prong rather than take the statement from Heron that says if it's closely balanced, we're not going to second-guess the jury with prejudices. Right. And I mean, as of now, we're still following Heron, and that hasn't been overruled. I know a case was argued in the Illinois Supreme Court recently on that, two weeks ago maybe, where that is an issue before the court. So I guess, you know, if this court is concerned about whether the Supreme Court is going to change the plein air test, your Honor might want to hold this, you know, and wait for that decision to come out. But for now, you know, we're following Heron, and it says if it's closely balanced, you know, you have an error. It's reversible. Now, I also would submit, you know, I don't think the court should change that rule. It would be really difficult to show, you know, in a case like this, any of these 431B cases, because we're not allowed to kind of go into what's happening in the jury room, what's happening during deliberations. You know, we don't impeach the verdict by what happened behind closed doors. And so it would be tough to imagine a circumstance where you could ever, I guess, find a 431B error reviewable under plein air if that test were to change in this circumstance. Thank you. Thank you very much, Mr. President. Mr. Runner. May it please the Court. Good morning, Your Honors and counsel. Thomas Rallo on behalf of the people. This seems to me pretty, well, fairly straightforward case. Either he was driving within the terms of his restricted driving permit or he was not. How was he not? He was not because he was driving for the purpose only of getting gas. Now, he testified at trial. Well, no, he was also sending, getting out advertising. Two things on that point. First, he did not tell the officer. He specifically told the officer I left work to get gas. That's what I was doing. Second, when he was asked, well, what do you do when you're out? He did not specifically say when I was at the Creef Corp gas station I was handing out business cards. He says, oh, I hand out business cards everywhere I go. I put them on boards, flyers. He didn't say when I was at this station, that's what I was doing. It was kind of a getting around the question answer because he was just going to get gas. That's what he testified. What's the radius? What's the radius? It is, well, that is, it is for whatever his going to and from work or work-related responsibilities. I mean, the actual language of the permit. Self-related, I mean, self-employment related duties. Self-employment related duties, correct. So he's an entrepreneur tattooist, right? Correct. And he, if. So he wants a clientele that's, anybody who wants to get a tattoo, could drive over to Peoria, I mean, to get it. Well, theoretically, he could drive anywhere in the state and hand out business cards under his, under that rationale. I'm not sure that's what the intent of the permit is. The permit is, this is allowing you to get to work and you don't have to go get supplies. You can go get supplies. See, that's the interesting thing about this is the, when you refer to the intent, we're talking about setting guidelines to whether or not someone criminally has violated their permit, correct? Correct. Beyond a reasonable doubt. Correct. So is that left to a defendant to define the intent in an ambiguous statement that does not specify the radius? It is left to a reasonable person whether they can interpret that, the requirements. And the defendant is, would presumably be a reasonable person, but that's not just, I'm offended. You know, I'm not trying to be unfair, but why don't you, what is the definition of a permittee to drive in conjunction with self-employment related duties within the list of work hours and radius? What would a reasonable person say the radius is? How would you define it? I would define it as, well, if... I'm not trying to put you on the spot, but how would a reasonable person define it? A reasonable person would define it as going to work, coming back from work. If I'm going to specifically pick up supplies, if I'm going to do something, if I'm going to a, I believe he's allowed to travel outside of state for these things. If I'm going for a specific purpose that's related to my job. So, yes, it does give him pretty broad discretion in doing this, but he can't simply say, well, you know what, I feel like I want an ice cream cone from Ollie's up in DeKalb, so I'm going to go up there, and then while I'm there I'm going to pass out business cards, and that gets me off the hook. That's not directly related to the purpose of his job, which is why I say in the brief that if he had been going to get supplies or going to work and there happened to be a gas station and he stopped, that would have been okay. That's incidental to what his job-related function is. If he needs transportation for his job-related functions, does he need gas? Yes. And the question then is, and I think the court is going to have to answer, is really almost as a matter of law, does he have the permission to go get gas? Is that within what is required or allowed under a restrictive driving permit? Because... It isn't really a matter of law, is it? How clear, the clarity of this... Our position is that it's clear enough that you know that if there's a gas station closer in Pekin that's the same thing, you have to go there, regardless of the price. Because you're talking about price, now you're talking about necessity defense. It was necessary... Well, it was lesser evil to go to buy lesser gas than going to Creek or paying a little bit more for gas. And the 100 octane... Yes, I did the same thing. Yes, a little bit. Freedom gas stations do offer 100 octane, but it did not... Nothing I turned up did tell me which stations offered it. So when the person is looking at this, a reasonable defendant who has this restriction, does he have to be an expert on Google and other things to find out the right gas station? Well, I think the joy of Google is you don't have to be an expert on anything. But you can certainly know... If you have specialized gas and you know that you have restrictions on what you can do or not do, I think you have a bit of a duty to find out where the nearest location is. How does he know he has a restriction on going to gas stations? Does it say that in the permit? It doesn't specifically say that. But, again, if we simply say you can go anywhere to get gas that meets the requirements, then he can go anywhere. The point of a restricted driving permit is to restrict your driving, not to give you carte blanche to go anywhere to buy gas. Right, but the point of a restricted driving license, too, is to let the person know what their restrictions are. Let me ask you, what's the procedure for doing this? How did this stop occur? Well, he was being... The officer was following the motorcycle and clocking him based on what his speed was and determined that he was speeding. So he was clocking him for speeding him. And so how did the restricted driving license come up? Well, the officer found out from the defendant that he has this restricted driving permit, and he checked the requirements of the permit. So the officer looks at the permit? Correct. All right. And so did he ask him any questions to find out whether he was operating within the restrictions or not? He asked me, what are you doing? And he said, I'm getting gas. I left from work and got gas. Okay, and there's nothing in the restriction that says that there's anything wrong with that. So why was he arrested or cited or whatever? Because the officer determined that he had probable cause to believe that he was operating outside of the permit. Based on what? Based on the fact that he was not going related to his job. How did he know that? Did he ask him what he was doing? He just assumed that because he was getting gas it was not job related? He asked me, what are you doing? He said, I went from my job to get gas. He said what? I left my job and went and got gas in Creve Coeur, which is six to eight miles away. Where was he doing his job? Did he ask him that? Well, his work is listed in Pekin. So when you say I left work, people would presume, I guess, perhaps, correct me, but would presume that you're leaving your place of work. If I say I left work, it would be from down the street. So if a police officer is going to cite somebody for a violation of a restricted statute, I mean a restricted permit, it's okay for him to assume that he's violating the permit? Or does he have to ask? Well, our position is he did ask, what are you doing? And when he got the answer, I was simply getting gas, or I went and got gas. That was sufficient in his mind to give him the citation. Now it becomes a matter of prosecuting and proving to the jury beyond a reasonable doubt. So he never challenged the citation itself. He didn't say you didn't have enough evidence or probable cause, and he did a motion to suppress, but he didn't do a motion to dismiss based on lack of probable cause. So at this stage, what we're at is did we prove it beyond a reasonable doubt? And under the Collins standard, of course, we have to look at the evidence from the most favorable people to determine whether that's the case. This was a jury case. Correct. Do we know what the jury instruction said about it? Did it talk about it? Did the person believe that it was within the boundaries or without the boundaries of the permanent? I do not recall off the top of my head exactly what the instructions were. We aren't really addressing that, unfortunately. We don't have the records for it. I'm curious. With regard to the sufficiency of the evidence, the state maintains their burden beyond a reasonable doubt through the entire trial. So this is not a situation where sort of like a prima facie case is presented and then the burden of persuasion might shift over to somebody else. Not in this kind of case. So on the sufficiency of the evidence case, part of your argument has to do with what the defendant said at the time of the initial stop and arrest versus what was said at trial and so forth. But is that in some way subtly changing the burden, putting it on the defendant rather than the state? When you're saying the defendant, once the state showed that he was in this gas station and it wasn't in Pekin, then he had to show the defendant that this was related to this restrictive driving permit. Well, in a way that is true in every case once you get past the directive verdict. I mean, once the judge determines that there is sufficient evidence to go for, you know, overcoming the directive verdict in the motion, then the defendant puts on his case to try. Essentially at that point he's trying to disprove or counter what the state has presented. So it's not exactly a prima facie case, but you have already reached the certain level of evidence sufficient to prove the defendant guilty, at least in the judge's mind. See, what is troubling me in this case with regard to the sufficiency of the evidence is it appears that in your argument you're taking the language standing alone in the restrictive driving permit and considering a series of cascading inferences from that, that this means this, this, this. Isn't that, how is the defendant with any clarity knowing those cascading inferences are part of the restriction? You're making inferences with regard to what you're saying a reasonable person could only interpret this to mean A, B, C, and D. That you couldn't get gas standing alone, you couldn't do this, you couldn't do that. Is that correct? Correct. Though I'm not sure if that's a sufficiency of the evidence problem or a vagueness to the permit problem. I guess they're interrelated in a way, aren't they? In a way, because, you know, because if you find that the evidence, you know, if you interpret it the way we are asserting it should, then the evidence is sufficient. But you would have to, almost have to find that the permit is too vague to show that that evidence, the defendant, it was to be incapable of knowing what he was required to do. But if you accept that this permit is narrow enough, because it is broad, I give you that, but if it's narrow enough, then was he acting within the scope of this permit becomes the question. Yeah, I mean, that's conundrum in this case, isn't it? Because the interrelationship between the sufficiency of the evidence and the interpretation of this, a reasonable interpretation of the restriction, requires you to state exactly what the restriction would be and whether he was outside the scope of that restriction. And that requires, as I said, these cascading inferences from your perspective. And when I say inferences, you're making it, you're inferring that their intent at the time of the restriction was to do this and that. Could you say that sometimes people have the intent to do something but don't get the job done? Absolutely, in many instances, absolutely, yes. And when you're drafting a restriction, especially one that could have criminal penalties, shouldn't you sort of be clear on what you're stopping someone from doing or what they shouldn't do? Certainly, you know, he received a great benefit in having a great amount of freedom in this permit. In other words, he had the benefit of having a poorly drafted restriction. I wouldn't necessarily say poorly drafted from my perspective, but certainly a broad worded restriction, yes. Do you know if this is common in a self-employed situation? I do not know. I mean, this is a unique set of circumstances as far as my experience with these cases go. I mean, I couldn't tell you any other one that I've seen that has quite such a broad language. It doesn't mean that they're out there. I've seen restrictions before, and usually they're A, B, C. I mean, that's what you've seen before too, right? Yeah, you have to go here, go there, and that's it. This doesn't have much to it, does it? I mean, you're working with what you've got. Yes, yes. And, you know, it was sufficient for a jury to find that he was within or without the restrictions. Therefore, we believe that there was – in our mind, you know, it's an A or B question. If you find that this wasn't sufficient or it was too vague, then the other issues in the case go away. If you find that it was sufficient, then the evidence is more than enough to prove him guilty, and then those other issues still go away because it's – And to reach that second point that you mentioned, we have to be able to delineate the restriction. In more precise language, we have to infer language in the restriction that a reasonable person would absolutely infer. Yes, well, whether a reasonable person in that situation would understand that restriction. Yeah. Right. And that would have to be an inference of their understanding. Well, every reasonable inference taken from the evidence. With that, we would ask – Thank you, Mr. Arado. Ms. Bryson. Your Honors, I just want to point out, I guess, you know, the Court refers to Mr. Arado as kind of like working with what he's got. The defendant was working with what he had, too, and what he had was this permit that allowed him very broadly to drive within a radius as required for self-employment-related purposes and in conjunction with self-employment-related purposes. There are a lot of things you do when you're self-employed. You know, you have to drive to get your supplies. You have to drive to find a place to house your business, to advertise your business, to get your utilities, to pay for your utilities, to pay your rent, do your taxes. The implication made by the State here is that this defendant was trying to take advantage of the language of the restriction. Based on what, though? There's nothing in the facts in this case that suggests he's taking advantage of the language in this permit. He's doing what he thought he could, and to Justice McDade's point during the State's argument, nobody bothered to ask him any more than, where are you coming from? I think that was the question that the officer said he asked. Where are you coming from? If it's working, I'm getting gas. You know, if it's working, I'd like to get gas. Well, there were no follow-up questions. Nothing was done to try and verify, was he within the scope of this? Did he think he was within the scope of this? Would a reasonable person be able to interpret whether they're within the scope? No more questions. Where were you working? What were you doing? You know, this is really broad language. The officer seemed to conclude, well, you're outside of Pekin. There are gas stations in Pekin. You must be violating the permit. The permit just simply isn't that narrowly drawn. Could I say that the practical problem with the officer not having asked is that him not being more specific was used against him at his trial? Right. Where if he had simply been asked, he then could have said, you know, I was out advertising my business or soliciting new business. But the fact that he didn't volunteer that was held against him. Right, and I would go further and say, how is he even to know he should volunteer that information when this is so broad? It doesn't, you know, there's nothing here that says you need to explain more than just I was working and getting gas. I drive my vehicle for work. It needs gas. I would submit the proof fell short. It wasn't the defendant's burden to prove himself not guilty, but the state's burden to prove that he did violate this, the restrictions in this permit, and to prove that beyond a reasonable doubt. And if your honors have the same questions I have about the permit language itself and how this defendant was to interpret that, you know, alternatively I suggest you find that it was unconstitutionally vague and reverse outright. Unless you have other questions. Thank you. Thank you. I'm going to take this matter under advisement. In fact, it was a written disposition. I'm going to have a short recess.